UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

JAN 2 6 2012

PAMELA S. CLARK,

     Plaintiff,

v.

                                   Case No.: 2:11cv228

WESTERN TIDEWATER
REGIONAL JAIL AUTHORITY,

     Defendant.

## OPINION AND ORDER

This matter comes before the Court on Defendant Western Tidewater Regional Jail Authority's ("WTRJA") Motion for Summary Judgment, which it filed on June 28, 2011. Plaintiff Pamela S. Clark ("Clark"), who is proceeding pro se, filed her timely Response on August 3, 2011 and supplemental submissions on September 7, 2011 pursuant to a Rule 56(e)(1) Order that this Court issued. WTRJA filed its Rebuttal to Clark's Response on August 4, 2011 and a Response to Clark's supplemental submissions on September 9, 2011. For the reasons set forth below, WTRJA's motion is GRANTED IN PART and DENIED IN PART.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Clark is a white female, who was fifty-two years old when WTRJA terminated her employment in November, 2009. She commenced this action against WTRJA on April 21, 2011. In her complaint, Clark alleges that she was the victim of repeated harassment at her

place of employment, Western Tidewater Regional Jail ("the Jail"), and that she received injuries during job-related training for which she was subsequently terminated. R.[1] 9.

On August 25, 2011, the Court held a hearing on WTRJA's motion. S. Lawrence Dumville, Esq., represented WTRJA, and Clark appeared pro se. Heidi Jeffreys was the court reporter. At the hearing, Clark proffered documents in support of her position. She was ordered to file them with the Court, together with an affidavit or declaration identifying the documents, within ten days. The Court subsequently entered a Rule 56(e)(1) Order reiterating Clark's obligation to file documentation in support of her response to WTRJA's motion. Clark timely filed supplemental supporting documentation accompanied by a declaration on September 7, 2011. WTRJA responded on September 9, 2011. Discovery in this case closed on October 26, 2011. Accordingly, WTRJA's motion is now ripe for decision.

Having reviewed the entire record, the Court presents the following facts in the light most favorable to Clark, the non-moving party. See Gilliam v. S.C. Dep't Juvenile Justice, 747 F.3d 134, 135 n.1 (4th Cir. 2007); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

---

[1] "R." refers to the record of the parties' filings with the Court in this case.

## A. **Clark's Conditional Offer of Employment and Termination**

Clark accepted a Conditional Offer of Employment as an officer with the Jail on October 6, 2008. R. 39. Her offer was conditioned on successful completion of a six month probationary period and state-mandated training. R. 38.

Virginia law requires all probationary jail officers to complete training, also known as Entry Level Jailor School ("Jailor School"), "at an approved criminal justice training academy in order to remain eligible for appointment or employment." Va. Code § 15.2-1706(A). Jailor School must be completed within twelve months of the date of hire unless the employee is granted an extension. 6 Va. Admin. Code § 20-50-40(A)-(B). Pursuant to Virginia law, the Department of Criminal Justice Services has established minimum training standards for jail officers. Va. Code. § 9.1-102(9); 6 Va. Admin Code §§ 20-50-20, -110. At the time of Clark's employment, the Defensive Tactics ("DT") portion of Jailor School included several fight-simulation exercises commonly referred to as "Redman scenarios."[2] See, e.g., R. 54-56.

WTRJA gave Clark three opportunities to attend and complete Jailor School during the course of her employment with the Jail. It first enrolled Clark in the Portsmouth Sheriff's Training Academy, commencing January 5, 2009. R. 41. Clark failed the DT

---

[2] The scenarios apparently derive their name from the color of the protective gear that course instructors wear.

portion of the course. WTRJA provided Clark remedial DT training in April, 2009 and scheduled her to attend training at the Chesapeake Sheriff's Training Academy ("Chesapeake Academy"), commencing June 5, 2009. She did not attend the training because she tore her right ACL during a non-work-related activity. WTRJA extended Clark's six month probationary period and enrolled her in the DT portion of Jailor School, commencing September 25, 2009 at the Chesapeake Academy. On September 21, 2009, Clark's physician wrote a note indicating that she could "not participate in excessive exercise due to ACL surgery."[3] R. 142. Clark presented the note to her supervising sergeant, who warned her that she would lose her job if she did not complete the training. R. 85, 121.

Clark began her third attempt at DT training as scheduled, but again failed to successfully complete it. R. 42. On October 2, 2011, she injured her left knee during training. R. 41. She was seen by a doctor that day and cleared to return to training without restrictions. Id. On October 6, 2009, Clark received numerous hits to the head during a Redman scenario, which she ultimately failed after three attempts. R. 56, 189. Between October 7 and 8, 2009, Clark attempted and failed another Redman scenario three times. R. 54. Thereafter, a Chesapeake Academy official dismissed Clark from the remainder of the training course. R. 35, 42.

---

[3] Clark explained at her hearing that this note misstated that the restriction was due to ACL surgery when it was in fact due to ACL injury.

On October 14, 2009, Clark complained of head injuries she sustained on October 6, 2009 to her physician. R. 194. The physician placed Clark on light duty status. R. 161, 169.[4]  On or around the evening of November 3, 2009, the Jail's Director of Administration and Security pulled Clark from her shift and began questioning her about her restricted duty status and the handicap decal displayed on her car. R. 86. After Clark explained that her husband was disabled, the Director told her that if she did not return to full duty status the next day she would be fired.  Id. Clark's physician cleared her to return to full duty beginning November 4, 2009. R. 166-67.

On November 5, 2009, the Jail's Director of Training recommended that the Jail terminate Clark's employment due to her inability to successfully complete DT training. R. 42.  On November 10, 2009, the Jail's Superintendent issued Clark a letter of termination. R. 43.

### B. Clark's Harassment and Disparate Treatment

Clark's complaint states that after she refused the sexual advances of one of her superiors, Lieutenant Michael Phillips, he began tormenting and humiliating her on a daily basis. R. 9. She claims that Lieutenant Phillips called her stupid on a daily basis

---

[4] On November 23, 2009, a different physician diagnosed Clark with post-concussion syndrome and ordered a CT scan, which came back normal. R. 144-145, 150-151.

and assigned her to duties for which she was not trained, that he denied her certain privileges afforded to other officers such as "clear bag approval," computer access, and the ability to take regular breaks. R. 249. Clark further alleges that sexual harassment of female officers by superiors, including at least two incidents of a black male officer exposing himself to white female officers, was "the norm" at the Jail. R. 9, 85.

In support of her allegations, Clark has provided the declaration of Officer Tiffany Finn, who worked at the Jail with Clark. R. 197-98. Officer Finn states that she was aware that Lieutenant Phillips verbally abused Clark and that she also experienced negative treatment during her first year as an officer. R. 198. Officer Finn attests that Clark was not allowed to take breaks with the same frequency as other officers and that she was not given a computer log-in during her employment even though other officers received their log-ins within a month of being hired. Id.

Clark also suggests that she received unfavorable treatment on account of being a white female because the "racial make up [of the jail] is 90% (APPROX.) black." R. 9-10, 196, 199. In this vein, she alleges that different rules applied to different people and that she was forced to enter DT training when she had a physician's note stating that she could not participate in excessive exercise. R. 9. As evidence of discrimination, Clark has provided a list of

instances in which she was treated differently than black female officers at the Jail.[5]  R. 199.

WTRJA denies Clark's sexual harassment and discrimination allegations, and claims that Clark never filed a complaint of harassment or other objectionable conduct against another employee. R. 31, 60, 70. WTRJA has submitted an excerpt from its Personnel Policy and Procedure handbook defining sexual harassment and stating that:

> Employees who experience sexual harassment are encouraged to make it clear to the offender, at the time of occurrence, that such behavior is offensive. If the situation cannot be resolved by the employee or if the offensive action is repeated, the employee should immediately notify his or her supervisor or other appropriate officials.

R. 46. Clark claims that she notified no less than five Jail employees in positions of command about Lieutenant Phillips's behavior. R. 112. In March or April of 2009, Clark complained to two Jail officials about the harassment she suffered under Lieutenant Phillips's supervision, and the Jail transferred her to the night shift. R. 85-86. After the transfer, Clark states that she was happy with her work and with her new supervisor, to whom she also complained about Lieutenant Phillips's actions. R. 86, 112.

---

[5] She alleges that there were six instances, but only two of her descriptions actually reference the race of the other officers.

## C. Exhaustion of Administrative Remedies

Clark filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 20, 2009, alleging discrimination on the basis of race, sex, and disability. R. 247-50.  On September 13, 2010, Clark filed an Amended Charge of Discrimination with the EEOC alleging discrimination based on race, sex, disability, age, and retaliation.[6]  R. 35.  WTRJA received notice of the initial charge on December 1, 2009 and of the amended charge on September 20, 2010. R. 244.  On February 3, 2011, the EEOC sent Clark a notice of dismissal and of her right to sue. R. 38.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its

---

[6] Clark's complaint makes no allegations related to age or retaliation.

motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the movant makes such a showing, the nonmoving party is required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quotations omitted). Although the Court must view the record as a whole and in the light most favorable to the nonmovant, see Terry's Floor Fashions, Inc., 763 F.2d at 610, the nonmovant "cannot defeat summary judgment with merely a scintilla of evidence," Am. Arms Int'l. v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). Moreover, if "the evidence is so one-sided that one party must prevail as a matter of law," the Court must grant summary judgment. O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52).

### III. DISCUSSION AND ANALYSIS

Because Clark is proceeding pro se, the Court construes her pleadings liberally.[7]  See Gordon v. Leeke, 574 F.2d 1147, 1151

---

[7] Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.  While the right "does not

(4th Cir. 1978); Jacobi v. Blocker, 153 F.R.D. 84, 86 (E.D. Va. 1994). Moreover, the Court notes that "trial courts are encouraged to liberally treat procedural errors made by pro se litigants, especially when a technical or arcane procedural rule is involved." Bauer v. Comm'r, 97 F.3d 45, 49 (4th Cir. 1996). With these precepts in mind, the Court construes Clark's complaint as alleging claims for sex, race, and disability discrimination with respect to her termination and claims for hostile work environment based on sex and disparate treatment based on race during her employment with the Jail.

## A. Discriminatory Discharge Claims

### 1. Race and Sex Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful to terminate an employee because of her sex or race.  42 U.S.C. § 2000e-2(a)(1); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). When the employee presents no direct evidence of discriminatory animus on the basis of a protected trait, the employee can rely on circumstantial evidence to raise the inference of discrimination under the McDonnell Douglas burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005).

---

exempt a party from compliance with relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

Under the McDonnell Douglas framework, the plaintiff has the burden of establishing a prima facie case of discrimination. Meritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010). If she succeeds, the defendant must provide a legitimate non-discriminatory reason for the plaintiff's adverse treatment. Id. If it does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretextual and that prohibited discrimination is the cause of plaintiff's treatment. Id. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000), and the plaintiff carries the burden of demonstrating intentional discrimination by the preponderance of the evidence, Meritt, 601 F.3d at 294.

To establish a prima facie case of discrimination under Title VII, Clark must demonstrate that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

WTRJA concedes that Clark is a member of a protected class as a Caucasian female and that she suffered an adverse employment action when she was discharged. R. 29. It argues, however, that she cannot establish element three of a prima facie case for prohibited discrimination because she has failed to demonstrate that she was performing her job in a manner that met WTRJA's legitimate expectations at the time it terminated her employment. The Court agrees.

Virginia law requires that jail officers complete Jailor School within twelve months of hire in order to maintain employment. 6 Va. Admin. Code § 20-50-40(A)-(B). The record reveals that WTRJA gave Clark three opportunities to complete the DT portion of Jailor School within the first year of her employment. It extended her probationary period by three months to allow for the third opportunity. When Clark did participate in DT training, she repeatedly failed her evaluations, leading the Jail's Director of Training to conclude that Clark does not "possess the skills nor [sic] mindset to successfully complete this training." R. 42. WTRJA's evidence discloses that after a year of employment, Clark had not completed the state-mandated training.

The only evidence Clark has submitted to show that she was meeting her employer's legitimate expectations consists of two Personnel Evaluation Reports. R. 126-29. The first, which covered the period of October 8, 2008 through April 6, 2009, notes various

performance deficiencies and recommends that her probation period be extended until she is able to complete Jailor School. R. 128. The second, which covered the period of April 6, 2009 through July 5, 2009 notes performance improvements, but states that she missed the DT portion of the last school and that she was scheduled to complete a subsequent DT training. R. 128. Both evaluations clearly state the expectation that Clark complete Jailor School and that she had not yet completed it at the time of the evaluations. R. 126-29.

Because Clark has failed to demonstrate that she was meeting WTRJA's legitimate employment expectations when it terminated her, she has failed to state a prima facie case for employment discrimination. Accordingly, a reasonable jury could not find that Clark's termination was the product of intentional discrimination. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006)(affirming summary judgment where employee failed to raise a genuine issue of material fact concerning his substandard performance, and, accordingly, a reasonable jury could not find that he was meeting his employer's legitimate expectations).

## 2. Disability Discrimination

The Americans with Disabilities Act ("ADA") makes it unlawful for employers to discriminate against employees with disabilities and imposes an affirmative duty on employers to reasonably accommodate employees with disabilities who are otherwise qualified

for perform their positions.  See 42 U.S.C. § 12112(a), (b); Myers
v. Hose, 50 F.3d 278, 282 (4th Cir. 1995).  Clark claims that WTRJA
violated the ADA by (1) failing to extend her probationary period
so that she would have more time to complete DT training after her
physician placed her on light duty status in September 2009 and (2)
terminating her on the basis of impairments she sustained during DT
training.  The Court interprets these allegations as failure to
accommodate and discriminatory discharge claims under the ADA.  To
succeed in either claim, Clark must be able to prove that she was
disabled within the meaning of the ADA at the time of the
prohibited conduct.  See 42 U.S.C. § 12112(a), (b); Rhoads v.
F.D.I.C., 257 F.3d 373, 387 (4th Cir. 2001).  WTRJA contends that
she cannot carry this burden.  R. 32, 93.

For the purposes of Clark's claims, the ADA defines an
individual with a disability as someone who has a mental or
physical impairment that substantially limits a major life
activity.[8]  42 U.S.C. § 12102(1).  In support of her claims, Clark
has submitted medical records obtained during and subsequent to her

---

[8] Major life activities include, "caring for oneself, performing
manual tasks, seeing, hearing, eating, sleeping, walking, standing,
lifting, bending, speaking, breathing, learning, reading,
concentrating, thinking, communicating, and working" as well as
major bodily functions such as "functions of the immune system,
normal cell growth, digestive, bowel, bladder, neurological, brain,
respiratory, circulatory, endocrine, and reproductive functions."
42 U.S.C. § 12102(2).

employment with the Jail as well as a letter that she sent to Captain Maskelony, the Jail's Director of Security.

A physician's note dated September 21, 2009 restricts Clark to work that does not involve excessive exercise. R. 122. She claims that she gave this note to her supervising sergeant prior to beginning DT training in September 2009. The letter she sent to Captain Maskelony on October 10, 2009 describes her performance during Redman scenarios on October 6, 2009 and explains that she was hit in the head several times. Other relevant medical documentation reveals that Clark's physician placed her on light duty status on October 14, 2009, indicating that Clark could not engage in prolonged standing. R. 163. On October 15, 2009, Clark's physician faxed a form to Clark's insurance provider indicating that Clark had a left knee sprain, possible concussion, and a lumbar strain. R. 169. The form states that Clark was able to engage in "normal activities" with an "opportunity to rest/sit every hour." Id. Clark contends that WTRJA received notice of this fax. R. 191. Upon examination on November 3, 2009, Clark's physician cleared her to return to full duty status. R. 167. The record indicates that on November 23, 2009, subsequent to her termination, Clark was diagnosed with post-concussion syndrome; however her CT scan was normal. R. 144, 143, 150.

Although the evidence indicates that Clark had physical impairments that limited her ability to engage in certain

- 15 -

activities, "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment [substantially] limits a major life activity." Toyota Motor Mfg., Ky., Inc., v. Williams, 534 U.S. 184, 195 (2002) (superseded by statute on other grounds). The Court is mindful of Congress's desire to liberalize the definition of disability with the ADA Amendments Act of 2008 ("ADAA"). See 29 C.F.R. Pt. 1630, App.  Nevertheless, courts in this Circuit continue to recognize that temporary impairments generally do not qualify as impairments that substantially limit major life activities. See Heiko v. Colombo Savs. Bank, F.S.B., 434 F.3d 249, 257 (4th Cir. 2006); Young v. United Parcel Serv., Inc., Civil Action No. DKC 08-2586, 2011 WL 665321, at *18 (D. Md. Feb 14, 2011); Bateman v. Am. Airlines, Inc., 614 F. Supp. 2d. 660, 670 (E.D. Va. 2009). In light of the evidence and these standards, the Court finds that Clark has failed to create a genuine issue of material fact as to whether she was disabled during her employment with the Jail.

With respect to her reasonable accommodation claim, Clark has not shown that her ACL injury substantially limited a major life activity requiring the Jail to accommodate her. Although walking, standing, lifting, and bending are statutory major life activities, there is no indication that Clark's ACL injury substantially limited in her ability to perform any of these functions. Rather,

Clark's physician stated that she should not participate in "excessive exercise." Clark has not argued, and the Court cannot conclude based on the statutory text and implementing regulations, that excessive exercise is a major life activity. See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(j).[9] Accordingly, Clark has not submitted evidence that would allow a reasonably jury to conclude that she was disabled prior to beginning DT training in September 2009. The ADA does not require employers to provide reasonable accommodations to employees who have non-disabling impairments. For the foregoing reasons, the WTRJA is entitled to summary judgment on Clark's failure to accommodate claim.

Similar reasoning applies to Clark's discriminatory discharge claim. The injuries Clark sustained during Redman training prevented her from prolonged standing and required that she be allowed to sit or rest every hour. There is no evidence that her concussion affected her ability to perform any major life activity. In her letter to Captain Maskelony, Clark makes no statements about the limiting effects of her injuries. She was apparently well enough to return to full duty status on November 3, 2011.

The fact that Clark was limited in the major life activity of standing does not automatically mean that she was disabled. See 42 U.S.C. § 12102(2)(A). There must be evidence allowing a reasonable

---

[9] The Court notes that Clark's physician did not prohibit her from engaging in any form of exercise.

jury to conclude that the limitation was substantial. See id.; Toyota Motor Mfg., Ky., Inc., 534 U.S. at 195. Although the ADAA's implanting regulations indicate that a substantial limitation need not severely restrict an individual's ability to perform a major life activity, 29 C.F.R. § 1630.2(j)(1)(ii), "the phrase 'substantially limits' sets a threshold that excludes minor impairments from coverage . . . ," Heiko, 434 F.3d at 257 (quoting EEOC v. Sara Lee Corp., 237 F.3d 349, 352-53 (4th Cir. 2001)). The Court is unable to conclude that a three week restriction on Clark's ability to stand for prolonged periods of time constitutes a substantial limitation on the major life activity of standing. See Cobey v. Green, 424 Fed. App'x 209, 212 (4th Cir. 2011) (granting summary judgment for movant where medical records indicated that claimant's physical limitations, including standing for long periods of time, were only temporary); Blackburn v. Trs. of Guilford Tech. Comty. Coll., 733 F. Supp. 2d 659, 663 n.3 (M.D.N.C. 2010). The Court therefore concludes that, as a matter of law, Clark was not disabled at the time of her termination. Accordingly, no genuine dispute of material fact exists as to whether Clark was terminated on the basis of disability, and WTRJA is entitled to summary judgment on Clark's discriminatory discharge claim under the ADA.

## B. Hostile Work Environment Claim

Clark's complaint and EEOC charges allege that she was the victim of constant harassment. Her complaint states that the harassment started after she refused the sexual advances of Lieutenant Phillips.  The Court interprets these allegations as a hostile work environment sexual harassment claim under Title VII. See Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 338 (4th Cir. 2003) (explaining that because an employee's work environment is a "term, condition, or privilege of employment," an employee may establish a Title VII violation by showing that discrimination on the basis of a protected trait has "created a hostile or abusive work environment"); Reinhold v. Virginia, 151 F.3d 172, 175 (finding hostile work environment where supervisor threatened claimant with extra work and denied her professional opportunities, among other things, when she refused his sexual advances).

WTRJA argues that it is entitled to summary judgment on Clark's sexual harassment claim because Clark failed to file a charge with the EEOC within the time period prescribed by Title VII.  Title VII establishes two potential limitations periods within which an aggrieved employee must file a charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1); Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir.1998).  Generally, an employee has 180 days after the alleged unlawful employment practice to file a charge, but that period is extended to 300 days for employees in

"deferral states."[10]   See 42 U.S.C. § 2000e-5(e)(1); Tinsley, 155 F.3d at 439.  Virginia is a "deferral state." See Edelman, 300 F.3d at 405 & n.3; Tinsley, 155 F.3d at 440.  Accordingly, Clark had 300 days from the last date of discrimination to file her charge. See Edelman, 300 F.3d at 405.

Clark's EEOC charge states that she suffered harassment from a male lieutenant from October 2008 through April 2009.  She filed her EEOC charge on November 20, 2009, meaning that any conduct occurring between January 25, 2009 and November 20, 2009 falls within the 300-day limitations period.  Moreover, the Fourth Circuit recognizes the continuing violation doctrine for hostile work environment sexual harassment claims.  See Gillium v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 140-41 (4th Cir. 2007); White v. BFI Waste Servs., LLC, 375 F.3d 288, 292 (4th Cir. 2004). Under this doctrine, "a hostile work environment claim 'may appropriately extend . . . to acts that occurred before the relevant limitations period [if] the hostile work environment continued within the limitations period as well." Gillium, 474 F.3d at 140 (quoting White, 375 F.3d at 293).  Accordingly, if Clark can show that acts occurring during the limitations period

---

[10] A "deferral state" is one in which state law prohibits the alleged unlawful employment practice and a state or local agency is authorized to "to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof . . . ." See 42 U.S.C. § 2000e-5(c); Edelman v. Lynchburg Coll., 300 F.3d 400, 405 & n.3 (4th Cir. 2002).

were part of discriminatory activity that began prior to the limitations period, her claim would include harassment that occurred prior to January 25, 2009. Id. Viewing the facts in the light most favorable to Clark, the Court cannot conclude that, as a matter of law, her sexual harassment claim is time-barred. Accordingly, the Court must determine whether WTRJA is entitled to judgment as a matter of law based on the merits of Clark's claim.

To succeed in a hostile work environment claim, the plaintiff must show: "(1) that she was harassed 'because of' her 'sex'; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2008). Harassment "because of sex" need not be motivated by sexual desire or be sexually explicit in content, rather it must be evident that "but for" the employee's sex she would not have been the victim of harassing conduct. See id.; Smith v. Sheahan, 189 F.3d 529, 533 (7th Cir. 1999). It is clear to the Court that if Lieutenant Phillips was subjecting Clark to adverse treatment because she refused his sexual advances, her harassment was because of sex. See Reinhold, 151 F.3d at 175; Hathaway v. Runyon, 132 F.3d 1214, 1222 (8th Cir. 1997).

WTRJA does not attack Clark's ability to establish elements one through three of a hostile work environment claim, rather it

argues that Clark's claim fails because WTRJA had no notice that she was the victim of harassment. R. 27, 209. This argument pertains to the fourth element of a hostile work environment claim——whether a basis exists for imputing liability for unlawful conduct to the employer. See Whitten v. Fred's Inc., 601 F.3d 231, 243 (4th Cir. 2010). WTRJA supports this contention with the affidavits of its human resources director, Betty Speight, and the Jail's superintendent during Clark's employment, David Simmons, which both state that Clark did not file a complaint related to sexual harassment or discrimination during her employment. R. 60, 70.

Depending on the relationship of the alleged harasser to the victim, different standards determine whether the alleged unlawful conduct may be imputed to the employer. See Whitten, 601 F.3d at 243 (4th Cir. 2010). Where the alleged harasser is a coworker, "the employer may be liable only 'if it knew or should have known about the harassment and failed to take effective action to stop it.'" Howard v. Winter, 446 F.3d 559, 565 (quoting Ocheltree, 335 F.3d at 334). However, where the alleged harasser is the victim's supervisor, the employer is subject to vicarious liability unless the employer can show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington

Indus. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); see Whitten, 601 F.3d at 243. The employer must prove both elements of the so-called Ellerth/Faragher defense in order to escape liability. See Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 265 (4th Cir. 2001).

WTRJA's "lack of notice" argument presumes that Lieutenant Phillips was Clark's coworker rather than her supervisor. See Howard 446 F.3d at 565. An individual's ability to take tangible employment actions against an employee, such as hiring, firing, failing to promote, demoting, docking pay, or substantially altering the employee's duties, is sufficient to confer the status of supervisor on that individual, but it is not a necessary condition of supervisory status. Whitten, 601 F.3d at 244, 247. Rather, the determinant is whether the individual's "employment relation to the victim was such as to constitute a continuing threat to her employment conditions that made her vulnerable to and defenseless against the particular conduct in ways that comparable conduct by a mere co-worker would not." Id. at 244 (quoting Mikels, 183 F.3d at 333).

WTRJA has not presented any evidence concerning Lieutenant Phillips's position at the Jail vis-a-vis Clark. Conversely, Clark's evidence reveals that Lieutenant Phillips had the ability to "write-up" Clark for performance deficiencies. R. 199. A Personnel Evaluation Report completed by Lieutenant Phillips

- 23 -

assesses Clark's performance after six months of employment and indicates that Lieutenant Phillips held the title of "Supervisor" with respect to Clark. R. 128. Furthermore, the declaration from Officer Tiffany Finn, one of Clark's coworkers at the Jail, states that Lieutenant Phillips was their immediate supervisor on the A-Team. R. 197. This evidence raises the inference that Lieutenant Philips was Clark's supervisor. See Whitten, 601 F.3d 246. Accordingly, for the Court to conclude that WTRJA is entitled to judgment as a matter of law, WTRJA must establish both elements of the Ellerth/Faragher defense by a preponderance of the evidence. See id. at 247.

WTRJA cannot succeed in this burden because a genuine dispute of material fact exists concerning the second prong of the Ellerth/Faragher defense.[11] Affidavits that WTRJA has submitted support the contention that Clark never complained of harassing conduct. R. 31, 60, 69. Yet Clark's declaration states that she reported Lieutenant Phillips's behavior to "no less than 5 people in positions of command." Notably, other than an employee's supervisor, the Jail's policy does not identify specific "appropriate officials" to whom an employee should complain in the

---

[11] The Court notes that WTRJA has provided the Court with the Jail's sexual harassment personnel policy. R. 44-46. Although the existence of such a policy is not conclusive evidence that the employer has satisfied the first element of the Ellerth/Faragher defense—that the employer exercised reasonable care to prevent sexual harassment—it "militates strongly in favor of [that] conclusion." See Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999).

event of harassment.  R. 46.  Clark attests that when Lieutenant Phillips found out about her complaints he stated, "I heard you were going to write me up, you just see what happens."  R. 112. Her declaration also claims that after reporting Lieutenant Phillips's conduct two Jail officials in March 2009, she was transferred from Lieutenant Phillips's supervision to the night shift.  R. 112.  Clark's employment evaluations confirm that she was transferred from Lieutenant Philips's A-Team to Lieutenant Carter's C-Team on or around April 6, 2009.  R. 126-28.  In light of the conflicting evidence, a jury might reasonably conclude that Clark took advantage of opportunities to prevent or correct Lieutenant Phillips's alleged harassment.  Accordingly, the Court cannot hold as a matter of law that the Ellerth/Faragher defense shields WTRJA from liability for Lieutenant Phillips's alleged unlawful conduct.[12]  For the foregoing reasons, the Court DENIES WTRJA's motion for summary judgment on Clark's sexual harassment claim.[13]

## C. Racial Discrimination Claim

Clark insinuates that she was subject to different standards at the Jail because she was white in a predominantly black

---

[12] The Court notes that even if Lieutenant Phillips was not Clark's supervisor, the evidence raises a genuine dispute over whether WTRJA had notice of the harassment.

[13] The Court notes that WTRJA remains free to file a subsequent motion for summary judgment addressing the sufficiency of Clark's evidence concerning the remaining elements of a hostile work environment claim.

workplace.  Her complaint specifically references the fact that she was forced to attend DT training after presenting her sergeant with a physician's note.  She has also submitted a list of occasions on which she was treated less favorably than black female officers, including two instances in which she was "written-up" but black female officers were not.[14]

As stated above, in the absence of direct evidence of racial animus, a plaintiff may use the McDonnell Douglas burden-shifting framework to prove discrimination.  Under the McDonnell Douglas framework Clark must make out a prima facie case of race-based discrimination before the burden shifts to WTRJA to present a legitimate reason for her alleged adverse treatment.  To establish the prima facie case, Clark must present evidence showing that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was the victim of an adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment.  See White, 375 F.3d at 295.  Although the Court questions Clark's ability to establish these elements based on the evidence she has submitted, WTRJA's motion only challenges Clark's ability to show that she was terminated on the basis of race.  It does not challenge her contentions of disparate treatment while employed with the Jail.

[14] She alleges that there were six instances, but only two of her descriptions actually reference the race of the other officers.

- 26 -

Because WTRJA has not met its initial burden of identifying deficiencies in Clark's race-based disparate treatment claim, the Court is constrained to find that the claim survives WTRJA's motion for summary judgment.

## IV.  CONCLUSION

The Court has an obligation to liberally construe the pleadings of a pro se plaintiff. Clark apparently alleges that she was terminated on the basis of her sex, race, and disability. She also appears to allege that she was subject to a hostile work environment on the basis of sex and to disparate treatment on the basis of race while employed with the Jail. Although WTRJA has carried its burden in demonstrating that no dispute of material fact exists concerning Clark's discriminatory discharge claims, it has failed to make this showing with respect to Clark's hostile work environment and race-based disparate treatment claims. For the foregoing reasons, WTRJA's motion for summary judgment is GRANTED with respect to Clark's discriminatory discharge claims under Title VII and the ADA; the motion is DENIED with respect to Clark's Title VII hostile work environment and race-based disparate treatment claim. The Clerk shall mail a copy of this Opinion and Order to the plaintiff.

IT IS SO ORDERED.

_____
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

January 26, 2012