**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

MAY  9 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

PAMELA S. CLARK,

     Plaintiff,

v.

WESTERN TIDEWATER
REGIONAL JAIL AUTHORITY,

     Defendant.

Case No.: 2:11cv228

### OPINION AND ORDER

Pursuant to the Supplemental Rule 16(b) Scheduling Order that the Court issued on February 29, 2012, ECF No. 43, Defendant Western Tidewater Regional Jail Authority ("WTRJA") filed a Second Motion for Summary Judgment and supporting memorandum against Plaintiff Pamela S. Clark ("Clark") on March 22, 2012. ECF Nos. 44-45. WTRJA also served a Roseboro Notice on Clark, who is proceeding pro se. See Local Civ. R. 7(K); see also Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). In a letter dated March 25, 2012, Clark asked the Court to rule on WTRJA's Second Motion for Summary Judgment based on evidence and briefs that she submitted in response to WTRJA's first Motion for Summary Judgment. ECF No. 47. WTRJA has not filed a Reply, and the time for submissions has passed. Accordingly, the Court considerers WTRJA's Second Motion for Summary Judgment fully

briefed and ready for disposition. For the reasons set forth below, WTRJA's motion is GRANTED.

## I. **PROCEDURAL AND FACTUAL BACKGROUND**

Clark is a white female, who worked at Western Tidewater Regional Jail (the "Jail") as a probationary jail officer from October 6, 2008, through the date of her termination on November 10, 2009. She timely commenced this action alleging claims of sex, race, and disability discrimination against WTRJA on April 21, 2011, after receiving notice of her right to sue from the Equal Employment Opportunity Commission ("EEOC"). R. 38.[1] On June 28, 2011, WTRJA filed its first motion for summary judgment, which the Court granted in part and denied in part. Specifically, the Court held that, as a matter of law, Clark had failed to demonstrate a prima facie case for discriminatory termination. Based on the record, however, the Court could not conclude that Clark's sexual harassment claim was time-barred or that no genuine dispute of material fact existed concerning the merits of Clark's sexual harassment and race-based disparate treatment claims.

On February 28, 2012, the Court held a Supplemental Rule 16(b) hearing at which Clark appeared pro se and S. Lawrence Dumville, Esq., appeared on behalf of WTRJA. The Court

---

[1] "R. ###" refers to the record of the parties' filings with the Court and corresponds to the PageID# located in the upper right hand corner of each page.

-2-

subsequently issued a Supplemental Rule 16(b) Scheduling Order, ECF No. 43, which, among other things, directed the parties to file all dispositive motions on or before 5:00 p.m. on March 28, 2012. WTRJA timely filed the instant motion pursuant to the Supplemental Rule 16(b) Order. In its supporting memorandum, WTRJA argues that Clark cannot demonstrate the elements of a claim for hostile work environment sexual harassment, that her sexual harassment claim is time-barred, and that WTRJA is not liable for the alleged sexual harassment. It further argues that Clark cannot demonstrate the elements of a race-based disparate treatment or hostile work environment claim. The following facts, construed in the light most favorable to Clark, see Gilliam v. S.C. Dep't Juvenile Justice, 747 F.3d 134, 135 n.1 (4th Cir. 2007), and Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985), are pertinent to the resolution of the instant motion.[2]

## A. Alleged Sexual Harassment

Shortly after commencing employment in October 2008, Lieutenant Phillips, Clark's supervising officer at the Jail, called her into his office and began asking her personal questions. R. 312. During this conversation, Lt. Phillips was leaning back in his chair and touching himself. Id. He had a

---

[2] The Court's January 26, 2012, Opinion and Order lays out the facts of this case in greater detail. ECF No. 41.

visible erection. Id. Although, Clark cannot recall the substance of the conversation, Lt. Phillips did not touch her or ask her to perform sexual favors. Id. Clark reported the incident to her superiors, who laughed at her, made fun of Lt. Phillips, and failed to investigate the matter. R. 313.

After Clark's conversation with Lt. Phillips, he began calling her stupid on a daily basis. She was assigned to duties for which she was not trained and denied certain privileges afforded to other officers such as computer access[3] and the ability to take regular breaks. R. 249, 197-98. Clark is also aware of instances in which a male officer at the Jail exposed himself to a female officer and in which female officers were asked to perform and did perform sexual favors for male officers. R. 9, 85. She, however, did not witness or participate in this conduct. Clark acknowledges that the only time Lt. Phillips subjected her to sexual overtures was during the October 2008 meeting. R. 30.

On April 12, 2009, Lt. Phillips disciplined Clark for opening all the cell gates in the block she was supervising without authorization. R. 332, 335, 340. During the first disciplinary session with Lt. Phillips, Clark refused to sign her training record and requested a meeting with the

---

[3] The record does not disclose the role that Lt. Phillips might have played in Clark's computer access.

-4-

superintendent. R. 335. After Lt. Phillips released Clark, he called her back to his office. Id. During the second meeting, Lt. Phillips was visibly angry. Id. He told Clark that he heard she was going to write him up and challenged her to "just try it . . . and see what happens." R. 336. After Clark complained to Jail officials, the Jail's director of security investigated the incident and issued a recommendation on April 17, 2009, that Clark be transferred to a different team. R. 333-34. The Jail subsequently transferred Clark to the night shift where she was happy with her work and her new supervisor. R. 86, 112.

Officer Tiffany Finn, one of Clark's coworkers at the Jail, attests that Lt. Phillips verbally abused Clark and that she too experienced negative treatment during her first year as an officer. R. 198. Prior to and during Clark's employment at the Jail, Lt. Phillips was repeatedly warned and disciplined for loss of composure, derogatory statements to subordinates, and insubordination. R. 320-329. None of these instances involved discipline for sex or race-based behavior. R. 315.

## B. Alleged Disparate Treatment Based on Race

Clark also alleges that she received unfavorable treatment on account of being a white female because the "racial make up [of the jail] is 90% (APPROX.) black." R. 9-10, 196, 199. As evidence of discrimination, Clark has provided a list of occasions on which she was treated less favorably than black

-5-

female officers, including two instances in which she was "written up" for misconduct but black female officers were not.[4] R. 199. She also cites racial discrimination as the reason she was forced to attend defensive tactics training after presenting her sergeant with a physician's note stating that she was not able to participate in excessive exercise. R. 9.

## C. Exhaustion of Remedies

WTRJA claims that Clark never filed a complaint of harassment or other objectionable conduct against another employee. R. 31, 60, 70. WTRJA has submitted an excerpt from its Personnel Policy and Procedure handbook defining sexual harassment and stating that:

> Employees who experience sexual harassment are encouraged to make it clear to the offender, at the time of occurrence, that such behavior is offensive. If the situation cannot be resolved by the employee or if the offensive action is repeated, the employee should immediately notify his or her supervisor or other appropriate officials.

R. 46. Clark claims that she notified no less than five Jail employees in positions of command about Lieutenant Phillips's behavior.[5] R. 112, 313.

---

[4] She alleges that there were six instances, but only two of her descriptions actually reference the race of the other officers.
[5] The record reflects that Clark notified a sergeant and corporal about the October 2008 meeting with Lt. Phillips, R. 313, and that the Jail's Director of Security and Director of Administration investigated the April 12, 2009, meeting, R. 333.

Clark filed a charge of discrimination with the EEOC on November 20, 2009, alleging discrimination on the basis of race, sex, and disability. R. 247-50. On September 13, 2010, Clark filed an Amended Charge of Discrimination alleging discrimination based on race, sex, disability, age, and retaliation. R. 35. WTRJA received notice of the initial charge on December 1, 2009, and of the amended charge on September 20, 2010. R. 244. On February 3, 2011, the EEOC sent Clark a notice of dismissal and of her right to sue. R. 38.

## II.  **SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'——that is,

-7-

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the movant makes such a showing, the nonmoving party is required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quotations omitted). Although the Court must view the record as a whole and in the light most favorable to the nonmovant, see Terry's Floor Fashions, Inc., 763 F.2d at 610, the nonmovant "cannot defeat summary judgment with merely a scintilla of evidence," Am. Arms Int'l. v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). Moreover, if "the evidence is so one-sided that one party must prevail as a matter of law," the Court must grant summary judgment. O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52).

### III.  DISCUSSION AND ANALYSIS

#### A.  Sexual Harassment Claim

The Court has construed Clark's allegations of unfavorable treatment that began after the October 2008 meeting with Lt. Phillips as a claim for hostile work environment sexual harassment under Title VII of the Civil Rights Act of 1964. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 724, 753-54 (explaining that in the absence of a tangible employment action

-8-

resulting from a plaintiff's refusal to submit to a supervisor's sexual demands, an action for sexual harassment is properly categorized as a hostile work environment claim); Reinhold v. Virginia, 151 F.3d 172, 175 (4th Cir. 1998) (examining whether hostile work environment existed where supervisor threatened claimant with extra work and denied her professional opportunities, among other things, after she refused his sexual advances). WTRJA has demonstrated that Clark lacks sufficient evidence for a reasonable jury to find in her favor on this claim.

Before examining the merits of Clark's sexual harassment claim, the Court must determine on what conduct Clark may rely to establish the claim. In Virginia, Title VII claimants must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); Edelman v. Lynchburg Coll., 300 F.3d 400, 405 & n.3 (explaining that Title VII claimants have 300 days to file a charge with the EEOC because the Virginia Council on Human Rights possesses the "authority to . . . seek relief from" alleged unlawful employment practices, which makes Virginia a "deferral state") (quoting U.S.C. § 2000e-5(e)(1)). Clark filed her first EEOC charge alleging harassment from a male supervisor on November 20, 2009, meaning that Clark's claim covered any actionable conduct that occurred between January 25, 2009, and

-9-

November 20, 2009. The meeting between Clark and Lt. Phillips in October 2008 falls outside that window. In its January 26, 2012, Opinion and Order, ECF NO. 41, the Court nevertheless concluded that it could not grant WTRJA's Motion for Summary Judgment on statute of limitations grounds because the facts in the record, read in the light most favorable to Clark, suggested that Clark's sexual harassment claim might extend to the October 2008 incident under the continuing violation doctrine.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute an 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). As such, the continuing violation doctrine permits courts to consider acts that occurred more than 300 days before the plaintiff filed an EEOC charge as part of a hostile work environment claim as long as conduct contributing to the hostile work environment occurred within the statute of limitations period. See Morgan, 536 U.S. at 118; Gilliam, 474 F.2d at 141. Accordingly, for the Court to consider Lt. Phillips's behavior in October 2008 as part of Clark's hostile work environment sexual harassment claim, acts within the limitations period must be sufficiently related to the October 2008 meeting "so as to comprise one unitary and ongoing unlawful employment practice." Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d 607, 621 (E.D. Va. 2011); Lewis v. Norfolk S. Corp.,

-10-

271 F. Supp. 2d 807, 812 (E.D. Va. 2003). The Court agrees with WTRJA's contention that Clark lacks evidence linking the October 2008 event to harassment that occurred within 300 days of November 20, 2009.

As an initial matter, it is difficult to identify events that occurred within the limitations period that might serve as "anchors" for Lt. Phillips's October 2008 conduct because Clark has not provided dates on which alleged harassing conduct occurred. It is evident from the record, that Lt. Phillips lost his temper while reprimanding Clark and subsequently accused her of attempting to report him on April 12, 2009. Other incidents of which she complains include a time when Lt. Phillips refused Clark's request for a break and a time when he lost his temper after she called a medical code for an inmate who appeared to be experiencing a seizure.[6] Clark was also denied computer access during her time at the Jail even though other officers received it shortly after commencing employment. She alleges that such harassment was constant during her time under Lt. Phillips's supervision. Even assuming that the aforementioned conduct occurred within the limitations period, Clark has presented no evidence linking it to the October 2008 meeting.

---

[6] The record also indicates that Lt. Phillips counseled Clark for safety infractions on three occasions in November 2008. R. 332.

To show that harassment occurring outside the limitations period is part of a single unlawful employment practice that extends into the limitations period, "the plaintiff must demonstrate that the separate acts are related." Edwards, 760 F. Supp. 2d at 621 (quoting Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009). In National Railroad Passenger Corporation v. Morgan, the Supreme Court affirmed the Eighth Circuit's conclusion that where "incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" pre- and post-limitations period harassment was part of the same hostile work environment claim. 536 U.S. at 120-21.

The same person committed the conduct of which Clark complains. Clark contends that Lt. Phillips frequently subjected her to verbal abuse, and Officer Finn's declaration corroborates this contention. Yet, the October 2008 incident in which Lt. Phillips allegedly propositioned Clark is entirely different in nature from the verbal abuse and denial of privileges that she subsequently experienced. Indeed, the only thing linking the October 2008 incident to Clark's subsequent treatment is her speculation that Lt. Phillips was retaliating against her because she refused his alleged advance.

A nonmoving party cannot defeat a motion for summary judgment on the basis of speculation and conclusory statements

-12-

alone. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Because Clark has failed to demonstrate that the October 2008 meeting and the other harassment of which she complains are sufficiently related, the Court cannot consider the 2008 meeting as part of Clark's hostile work environment claim. Accordingly, the Court must determine whether a reasonable jury could find WTRJA liable under Title VII for the harassment she allegedly suffered within the statute of limitations period.

To succeed in a hostile work environment claim, a plaintiff must show: "(1) that she was harassed 'because of' her 'sex'; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." Smith v. First Union Nat'l Bank, 202 F.3d 234, 241-42 (4th Cir. 2008). It is clear that Clark did not welcome Lt. Phillips's treatment. However, because she has failed to demonstrate that the treatment she suffered under Lt. Phillips's supervision within the statutory time-frame was because of her sex, the Court need not address whether the harassment was sufficiently severe or pervasive or imputable to WTRJA.

Remarks and conduct comprising a hostile work environment need not be sexually explicit or specifically directed at the

-13-

plaintiff to be actionable under Title VII. First Union Nat'l Bank, 202 F.3d at 242 ("A work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as an environment that contains unwanted sexual advances."); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010) (finding hostile work environment where male employees used language that denigrated women in plaintiff's presence and "singled her out for special scorn" even though sexist language was rarely directed at plaintiff); Smith v. Sheahan, 189 F.3d 529, 533 (7th Cir. 1999) ("It makes no difference that the [supervisor's] assaults and the epithets sounded more like expressions of sex-based animus rather than misdirected sexual desire."). A plaintiff must nevertheless present evidence that raises the inference that "but for" her sex, she would not have been the target of offensive conduct or discriminatory treatment. First Union Nat'l Bank, 202 F.3d at 242.

The conduct of which Clark complains consists of Lt. Phillips denying her certain privileges, calling her stupid, and yelling at her in an overzealous manner. Although Clark alleges that the Jail tolerated a culture in which male superiors propositioned female recruits, she has provided no evidence to support this allegation. Other than Clark's own statements, Officer Finn's declaration is the only supporting evidence that

-14-

Clark has submitted. But Officer Finn's declaration provides little support for Clark's contention that the abuse was because of sex. Officer Finn states:

> Pam talked with me alot [sic] about how she felt uncomfortable around Lt. Phillips. She spoke with me several times in regards to how she felt threatened when she was around him due to constant verbal abuse. . . . I understood what she was going through because [Lt. Phillips] had treated me the same way when I first started working at the jail. The mistreatment lasted for a year.

R. 197-98. Other than the fact that Officer Finn is a woman, nothing in this statement suggests that Lt. Phillips's behavior was motivated by animus toward women. See Gilliam, 474 F.3d at 142 & n.9 (explaining that witness testimony lacking specifics on how supervisor used plaintiff's race to treat her differently failed to support plaintiff's conclusory statements that race motived her adverse treatment). This is particularly true in light of the fact that Lt. Phillips's adverse treatment of Officer Finn subsided after a year.

WTRJA, on the other hand, has demonstrated that Lt. Phillips has difficulty controlling his temper and behaving in a professional manner toward men and women alike. It has submitted evidence that Lt. Phillips received a Letter of Warning on October 30, 2007, for losing his temper and making derogatory statements to male and female subordinates. R. 320. On July 14, 2008, Lt. Phillips received a Notice of Intent to Suspend from

-15-

Duty Without Pay for yelling at his male supervisor. R. 322-23. On February 4, 2009, Lt. Phillips received a second Letter of Intent to Suspend for arguing with the Jail's medical supervisor and losing his temper on the phone with the Jail's superintendent, both of whom are men. R. 328.  Lt. Phillips was never disciplined for exhibiting hostility based on sex. R. 315.

This is not a case in which a jury, presented with a record demonstrating a workplace contaminated with explicit and derogatory references to women, could infer that the plaintiff's adverse treatment was because of sex. See, e.g., Moby-Grant, 630 F.3d at 334. Rather, the record in this case contains no evidence, other than Clark's own statements, that such an environment existed at the Jail. See Gilliam, 474 F.3d at 142. Moreover, the evidence Clark has presented fails to raise a reasonable inference that Lt. Phillips would not have treated Clark in an abusive manner but for the fact that she is a woman.

WTRJA has argued that Clark's evidence is insufficient to support her hostile work environment sexual harassment claim. Having thoroughly reviewed the record, the Court can identify no more than a scintilla of evidence in support of this claim. Accordingly, WTRJA is entitled to summary judgment on Clark's hostile work environment sexual harassment claim.

## B. <u>Racial Discrimination Claim</u>

In its prior Opinion and Order, the Court expressed doubt about Clark's ability to establish a prima facie case for race-based discrimination during her employment at the Jail but denied WTRJA's motion for summary judgment because it failed to identify deficiencies in her claim. ECF No. 41 at 26-27. With the instant motion, WTRJA remedies this shortcoming and argues that Clark cannot demonstrate that the treatment of which she complains was racially motivated. The Court agrees.

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of race. 42 U.S.C. § 2000e-2(a)(1); <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009). Regardless of the theory of discrimination, the central question in all Title VII employment discrimination claims is whether the employer treated the plaintiff less favorably because of a protected trait. <u>U.S. Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 715 (1983).

In disparate treatment claims, where a plaintiff has presented no direct evidence that she was discriminated against on the basis of race, she must proceed under the <u>McDonnell Douglas</u> burden-shifting framework. See <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 485 (4th Cir. 2005). Under <u>McDonnell Douglas</u>, the

plaintiff has the burden of establishing a prima facie case of discrimination. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010). If she succeeds, the defendant must provide a legitimate non-discriminatory reason for the plaintiff's adverse treatment. Id. If it does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretextual and that prohibited discrimination is the cause of plaintiff's treatment. Id. In every disparate treatment action, the ultimate question is "whether the plaintiff was the victim of intentional discrimination," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000), and the plaintiff must demonstrate the discrimination was intentional by a preponderance of the evidence, Merritt, 601 F.3d at 294. A plaintiff who fails to establish the elements of a prima facie case necessarily falls short of creating a triable issue on the question of intentional discrimination.

    To establish a prima facie case of disparate-treatment discrimination, Clark must present evidence demonstrating the following elements: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) similarly situated employees outside the

protected class received more favorable treatment. See White v. BFI Waste Servs., LLC, 375 F.3d 288 (4th Cir. 2004).

Clark has failed to establish a prima facie case of discrimination for any of the treatment of which she complains. First, none of the treatment—being disciplined when black female officers were not, being forced to attend defensive tactics training after presenting a physician's note, not being permitted to take breaks upon request, and being denied computer access—amounts to an adverse employment action in the context of a Title VII disparate treatment claim. For any of these actions to rise to the level of an adverse employment action, Clark must show that they had some significant detrimental effect on the conditions of her employment and were not merely a "trivial discomfort." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999); see Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (explaining that Congress did not intend "interlocutory or mediate decisions having no immediate effect upon employment conditions" to fall within the proscriptions of Title VII). Clark has failed to demonstrate that the slights she suffered had a significant detrimental effect on the conditions of her employment. Moreover, the conduct of which Clark complains is substantially similar to conduct that the Fourth Circuit has declined to classify as adverse employment actions. For example, in Prince-Garrison v. Maryland Department of Health and Mental

Hygiene, 371 F. App'x. 351, 353 (4th Cir. 2009), the Fourth
Circuit held that an "employer's failure to provide [plaintiff]
with office supplies, reprimands for insubordination, meetings
with supervisors, and directions to attend counseling, do not
constitute adverse employment actions." In Richardson v.
Richland County School District, 52 F. App'x 615, 616 (4th Cri.
2002), the Fourth Circuit affirmed summary judgment for an
employer that assigned a plaintiff to an undesirable classroom,
failed to give her a new computer, and denied her access to a
classroom key because these actions did not amount to adverse
employment actions. Because Clark has not shown that the conduct
of which she complains had more than a trivial impact on the
conditions of her employment, she has failed to demonstrate that
she suffered an adverse employment action under Title VII.

Second, for several of the actions of which Clark complains
she has not demonstrated that similarly situated non-white
employees received more favorable treatment. Clark complains
that she was forced to attend defensive tactics training after
presenting a physician's note restricting her physical activity.
She claims that Officer Miranda Riddick was granted an extension
to complete the same training. Clark, however, does not provide
Officer Riddick's race or claim that the Jail allowed Officer
Riddick to postpone training upon presentation of a physician's
note. More importantly, Clark has provided no evidence to

-20-

substantiate her allegation that Officer Riddick received an extension.

Clark also complains of two instances in which she was disciplined more harshly than black female officers. Specifically, she alleges that she was written up for opening doors in cell blocks F4 and C1 without authorization. R. 199. She claims that Officer Nichols and Officer Poyner were not written up for the same conduct in cell blocks F4 and F1,[7] respectively. Id. Clark does not indicate when Officer Nichols and Poyner committed these alleged safety violations, and she has presented no evidence, other than her own statements, demonstrating that they even occurred. WTRJA, on the other hand, has provided documentation and affidavits from Jail officials corresponding to Clark's allegations. These materials show that on November 21, 2008, and April 12, 2009, Clark was counseled for unsatisfactory performance in relation to the unauthorized opening of cell block doors. R. 318, 339-40. On May 12, 2008, Officer Nichols received a letter of reprimand for the unauthorized opening of doors in cell block F4. R. 337. A letter of reprimand is a more severe form of punishment than counseling. R. 318. Accordingly, the record discloses that

---

[7] Clark maintains that cell block F1 has the same security status as C1.

-21-

Officer Nichols did not receive more favorable treatment than Clark.

WTRJA has no record of an incident involving Officer Poyner. Moreover, Officer Poyner became a non-probationary at the Jail on June 15, 2009. Clark was a probationary employee throughout her employment with the Jail. Because Clark has not indicated when Officer Poyner allegedly opened the F1 cell block doors, she has failed to demonstrate that she and Officer Poyner were similarly situated at the time of their respective infractions. Indeed, Clark has failed to present any evidence that Officer Poyner committed the alleged infraction.

Succinctly put, Clark attempts to prove instances of disparate treatment with nothing more than her own statements. "Such assertions, standing alone, are insufficient to sustain an actionable Title VII claim." Gilliam, 474 F.3d at 142. Because Clark has not demonstrated that she suffered an adverse employment action or that similarly situated non-white officers received more favorable treatment, she has failed to establish a prima facie case for race-based disparate treatment under Title VII.

If the Court interprets Clark as alleging a race-based hostile work environment claim, it would fail for the same reason—namely, she has not provided sufficient evidence to create a genuine dispute over whether her adverse treatment was

-22-

because of race. To survive a motion for summary judgment on a race-based hostile work environment claim, Clark must present evidence that the harassment was "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001).

Clark's submissions are devoid of facts supporting her contention that her alleged adverse treatment was based on race. As previously explained, Clark has failed to raise the inference that race motived the discipline she received for opening cell block doors without authorization or the Jail's requirement that she attend defensive tactics training. See Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) (explaining that the prima facie case raises the inference of unlawful discrimination).

She has also failed to provide sufficient evidence that she was denied computer access and regular breaks because of her race. She has submitted a list showing the racial composition of officers on the C Team and A Team. 131-34. It shows that twelve black and four white officers worked on C Team and that thirteen black and six white officers worked on A Team. Id. The leadership on C Team consisted of two black officers, and the leadership on A team consisted of one black and one white

-23-

officer. Id. Statistics can provide proof of employment discrimination, but their usefulness depends on the surrounding facts and circumstances. Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994). Clark has provided no evidence linking her teams' racial composition to her treatment. See Barnett v. Tech. Int'l Inc., 1 F. Supp. 2d 572, 579. (E.D. Va. 1998) ("Statistics, however, are probative only to the extent that they reveal a disparity of such a degree as to rule out chance; in other words, 'statistical disparities must be sufficiently substantial that they raise . . . an inference of causation.'") (quoting Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 995 (1988)).

By contrast, WTRJA has submitted the affidavits of the Jail's current and former superintendents, both of whom held official positions at the Jail during Clark's employment. R. 315-319. Both affidavits explain that, pursuant to standard practice, probationary employees are not granted full computer access. R. 316, 318. Similarly, officers who have completed their training may be afforded more flexibility in their break schedules than probationary officers. Although Officer Finn's declaration suggests that the Jail may have given other probationary employees computer access before Clark, nothing in her declaration indicates that this failure was racially motivated. See Gilliam, 474 F.3d at 142 & n.9.

In spite of their volume, Clark's submissions amount to little more than conjecture about the motivations behind the treatment she experienced while employed at the Jail, and accordingly, fail to adequately support an inference that her treatment was racially motivated. The record reveals that Clark has failed to make a showing sufficient to establish the existence of an element essential to her race-based discrimination claim and on which she will bear the burden at trial. See Celotex, 477 U.S. at 322. Moreover, in addition to identifying the deficiencies in Clark's evidence, WTRJA has presented evidence that her treatment was the product of her status as a probationary employee in a command-structured organization rather than her race. R. 318. O'Connor, 56 F.3d at 545. In light of the one-sided nature of the evidence, WTRJA is entitled to judgment as a matter of law on Clark's claim for race-based discrimination. See O'Connor, 56 F.3d at 545.

## IV.   CONCLUSION

Title VII is not a civility code, Ziske v. Mineta, 547 F.3d 220, 228 (4th Cir. 2008), nor is it designed to protect employees from personality disputes with their superiors, Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000). "The need for legally sufficient evidence of discrimination is critical in the context of [a motion for summary judgment]. Otherwise, supervisors . . . could not evaluate employees of a

different race [or gender] without the prospect of a lawsuit." Id. at 282. The Court has no doubt that Clark experienced treatment at the Jail—a setting primarily concerned with internal security—that was at times hostile and abusive, but "[t]he evidence must allow a reasonable jury to conclude that her mistreatment was due to her gender" or race. Ziske, 547 F.3d at 226. Clark has failed to satisfy this burden. Because Clark has failed to present evidence demonstrating that her treatment was based on a protected trait—an essential element of both her claims—her claims fail as a matter of law, and WTRJA is entitled to summary judgment.

For the foregoing reasons, WTRJA's Second Motion for Summary Judgment, ECF No. 44, is GRANTED.

This Opinion and Order shall constitute the final judgment of the Court in this matter, and the Clerk is DIRECTED to close the case.

The Clerk is further DIRECTED to mail a copy of this Opinion and Order to Clark and counsel for WTRJA.

IT IS SO ORDERED.

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May 9, 2012